CITY OF CINCINNATI (The State of Ohio), Appellee,

v.

**BAARLAER, Appellant.**

[Cite as *Cincinnati v. Baarlaer* (1996), 115 Ohio App.3d 521.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–960232 and C–960233.

Decided Nov. 6, 1996.

*Fay D. Dupuis*, City Solicitor, *Terrence R. Cosgrove*, City Prosecutor, and *Karla Burtch*, Assistant City Prosecutor, for appellee.

*Paul T. Saba*, Hamilton County Assistant Public Defender, for appellant.

*Per Curiam.*

These appeals, consolidated informally for purposes of argument by counsel, are taken from separate findings of guilt and sentences upon separate complaints for violations of R.C. 2919.25(C). We have, *sua sponte*, removed them from the accelerated calendar. Although the two complaints accuse the same individual, Michael Baarlaer, of acts constituting domestic violence against the same complainant, Sandy Beach, the offenses at issue are temporally distinct, but because the appeals raise identical legal issues, we have elected to consider the appeals together.

On January 30, 1996, Sandy Beach signed a complaint which alleged that Michael Baarlaer violated R.C. 2919.25(C) when he, by threat of force, caused her, as a family or household member, to believe he would cause her imminent physical harm when he pushed her "up against the wall and threatened to kill her." This complaint was assigned trial number 96CRB–003008 and is the subject matter in appeal number C–960232.

On January 31, 1996, Sandy Beach filed another complaint alleging that Michael Baarlaer caused her to believe he would cause her imminent physical harm, in violation of R.C. 2919.25(C), when Baarlaer "called from jail, stating 'as soon as I make bond, I'm going to kick your ass.'" This complaint was assigned trial number 96CRB–003169 and is the subject matter of appeal number C–960233.

The complaints came on for trial in tandem before a judge of the Hamilton County Municipal Court on February 26, 1996. Baarlaer, upon his affidavit of indigency, was represented by the same legal counsel advancing these appeals, who identifies himself as a member of the staff of the Hamilton County Public Defender. Because Baarlaer had a record of having been convicted previously of committing domestic violence, both charges were enhanced to misdemeanors of the third degree pursuant to R.C. 2919.25(D). Ultimately, Baarlaer was sentenced to terms of sixty days in jail, fined $150, ordered to pay costs on each charge, and credited with twenty-eight days he had spent in jail, with the days of confinement to be served concurrently. Notice of the appeals *sub judice* was filed March 28, 1996.

On May 17, 1996, the appellee filed a motion seeking an order dismissing the appeals premised on the representation that Baarlaer had "served the sentence on each charge * * * and was released by the Hamilton County Sheriff after fully satisfying the sentence." As a result, the city prosecutor submits that the appeals have become moot on the authority of *State v. Wilson* (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236, and subsequent cases adopting its rule:

"Where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction."

In response, counsel for the appellant asserts that *Wilson* does not control because Baarlaer had completed his sentences involuntarily.

After his convictions, Baarlaer moved the trial court for an order staying the execution of the sentences. On March 27, 1996, the motion was granted upon the finding that "the original bail is sufficient to assume the Defendant's continued

presence in this jurisdiction." Baarlaer was unable to post the $15,000 bond ordered originally, and, therefore, his counsel moved this court to reduce that amount. On April 12, 1996, we overruled that motion, and Baarlaer remained in the custody of the sheriff.

The undisputed underlying facts bring us squarely within the rule pronounced by this court in *State v. Harris* (1996), 109 Ohio App.3d 873, 673 N.E.2d 237, in which we held that an appeal from a conviction for domestic violence is not rendered moot as a matter of law by the completion of the term of incarceration imposed in the trial court's sentence, when the defendant has moved for and been denied a stay of execution of sentence and a reduction in the amount of the appeal bond; under these circumstances, the completion of the incarceration is involuntary.

Because we conclude that Baarlaer did not complete his sentence voluntarily, it is unnecessary to rule upon the arguable existence of collateral disabilities prejudicing Baarlaer, and the motion to dismiss these appeals is overruled upon the authority of *Harris, supra.*

The assignments of error in both appeals, and the core issue in each, are identical.

The first assignment is:

"The trial court committed a miscarriage of justice by finding the defendant guilty because the state failed to prove beyond a reasonable doubt that the conditional threats were imminent and that the defendant acted knowingly."

The second assignment is:

"The trial court committed a reversible error by on [*sic*] an admitted perjurer's testimony to find the defendant guilty beyond a reasonable doubt."

Baarlaer contends that the "critical issue" in each appeal is "whether the simple utterance of a conditional threat made by a defendant who immediately leaves the premise[s] and drives away from the alleged victim is legally sufficient to support a conviction for domestic violence under R.C. 2919.25(C)."

The language with which counsel for Baarlaer states the "critical issue" raises, clearly, a question of law, *viz.*, whether the evidence adduced by the prosecution, construed in the light most favorable to the prosecution, constitutes a basis in law for the conviction.

Although we find nothing in the record to establish that counsel made a Crim.R. 29 motion for acquittal, we are convinced that the rule embodied within the syllabus of *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, provides our standard of review: A question is one for determination by a trier of the facts when reasonable minds can reach different conclusions as

to whether each material element of a crime has been proved beyond a reasonable doubt. See *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574. In his brief and in argument upon it to this court, counsel for Baarlaer has agreed that this is our standard of review.

We will address, first, the offense which is the subject matter of the appeal numbered C–960232.

Baarlaer had been married to the complainant, Sandy Beach, had fathered one of her children, and, apparently, was living with her on January 30, 1996. Although he was then employed, Beach was receiving public assistance. Because Beach had been jailed for a conviction of "falsification" after she "perjured" herself when attempting to withdraw prosecution of Baarlaer upon a previous charge of domestic violence instituted by her, Baarlaer controlled her "welfare checks" through a power of attorney.

Beach testified that she was destitute and "upset" because Baarlaer had not "paid any of [her] bills" and had squandered her money on drugs. She called him on "his pager" and Baarlaer appeared at their home. Beach testified on direct examination:

"A. He pushed me up against the door, and he told me if I opened my * * * mouth that he'd kill me.

"Q. Did you believe that he would do that?

"A. Yes, ma'am, I do."

Although Baarlaer filed a notice of alibi in this case, he testified that he had arrived at the residence between 3:30 and 4:00 a.m. on January 30, found Beach sleeping on a couch, went to bed, and arose between 12:00 and 12:15 p.m. An argument began while Baarlaer was preparing to leave for work. He testified:

"A. When I was in my truck, backing down, she was standing in the kitchen doorway still yelling and screaming. I couldn't understand what she was saying because my window is taped up. It won't go up or down. You have to go in and out of my truck through the passenger door. I couldn't tell what she was saying. Like I said, I hear it all the time. I just tuned her out."

Beach contacted Cincinnati police, and an officer went to her home on January 30 to take her report. While at the home, the officer reached Baarlaer by telephone to inform him that "charges were being filed against him." When Baarlaer returned to the home, the officer was there, permitted him to unload his truck, and then took him into custody on the strength of Beach's allegations.

On the next day, January 31, a judge of the Hamilton County Municipal Court journalized an entry granting a temporary protection order comporting with provisions of R.C. 2919.26. Particularly, the court ordered, *inter alia,* that

Baarlaer "shall desist and refrain from beating, harassing, assaulting, having contact with, or threatening the Complainant."

Baarlaer's signature appeared on the temporary protection order, but he claimed that, despite his repeated experiences with accusations of domestic violence, he "had no idea" of what he was signing.

Baarlaer admitted on cross-examination that he called Beach from a telephone in the jail on January 31, 1996, although his version of the conversation was diametrically opposed to that of Beach.

Baarlaer testified:

"Q. Okay. And why did you call home?

"A. I had talked to a friend earlier, and they said my son wasn't feeling too good and that she was taking all my stuff and throwing it outside.

"Q. Did you ask to speak to the kids?

"A. I did, first thing. When she did—I asked how my son was doing, and she just started ranting and raving on the phone, and I hung up immediately. We weren't on that phone no more than 50 seconds, and I did not know I had a TPO against me either at the time."

Beach testified:

"Q. After receiving the TPO, did you have another occasion to have some kind of contact with him?

"A. He had called the house and I was busy. One of the kids had put—put him through on the phone. I grabbed the phone—'Who is this,' and he said, 'This is Mike,' he says, 'I'm making bond. I want my truck and my clothes or I'm going to kick your * * * ass.'

"Q. Did you believe he would do that?

"A. Yes, ma'am, I did."

■ The fundament of Baarlaer's argument that he cannot, in law, be found guilty of the charge contained in the initial complaint upon the facts as presented by the prosecution is that because he separated himself physically from Beach immediately after he uttered the threat to kill her, he could not have carried out that threat. Thus, he concludes, there is not, in law, a basis upon which to find that he could have caused imminent physical harm to Beach. Baarlaer submits that the word "imminent" must be read to be synonymous with "immediate" in the context of R.C. 2919.25(C).

It is rubric that when a word used in a statute is not given a special definition, it must be given its plain, ordinary meaning in the English language. Among the meanings of "imminent" found in Webster's New International Dictionary (2

Ed.1957) 1245 are "near at hand, impending, threatening to occur immediately." The same source attributes these meanings to "immediate": "not distant or separated in time, direct, continuous, occurring without delay." *Id.*

Baarlaer couples his contention that he could not have killed or, for that matter, have injured Beach physically because he left her side immediately after his threat, with the argument that Beach continued "to yell at" him as he drove his truck "down the driveway" as indicative that she did not fear that physical harm was imminent.

On the other hand, the police officer who responded to Beach's call at about 5:30 p.m., January 30, which by his calculation was about four and one-half hours after Baarlaer threatened her, testified when called as a defense witness that Beach was still "visibly upset."

■ To support his thesis that his threat to kill was conditional, Baarlaer cites us to *State v. Collie* (1996), 108 Ohio App.3d 580, 671 N.E.2d 338. There, this court held that one essential element of the crime of domestic violence brought under R.C. 2919.25(C) is proof that the victim believed physical harm was imminent, with the caveat that a defendant's utterance of a conditional threat, standing alone, is insufficient in law to support a conviction. In *Collie*, we wrote that "[i]mminent means 'threatening to occur immediately.'" *Id.* at 583, 671 N.E.2d at 340. *Collie*, however, must be confined to its facts and cannot be applied generally in instances where the prosecution relies upon R.C. 2919.25(C).

In *Collie*, the threat was "If I had a gun, I would shoot you." It was not accompanied by any overt act of physical violence. Mrs. Collie, to whom the language was directed by her drunken husband, testified that Mr. Collie did not own a gun and, moreover, that there was not a gun in the house. Under such circumstances, reasonable minds could conclude only that the accused had no means at hand to carry out the threat as made, *viz.*, to shoot his wife, and that its realization depended on Collie's possession of a weapon capable of firing a projectile.

The case at bar is factually distinct from *Collie*. A reasonable mind could conclude that Baarlaer's threat to kill Beach was coincident with an act of physical violence when he pushed Beach against a door, and that the combination of the threat and the violence caused Beach to believe that Baarlaer would do what he threatened to do, *viz.*, that Baarlaer would cause her imminent physical harm. The same reasonable mind could conclude, as well, that the threat was not one which required that it had to be accomplished by a specific means. In *Collie, supra,* the threat included specifically the use of a gun. Here, Baarlaer could have carried out his threat to kill using his hands alone to strangle Beach or to batter her to death. Clearly, Baarlaer's threat was not conditional in Beach's

mind. She believed he could do at that moment what he said he intended to do. Accordingly, we find that the particulars of R.C. 2919.25(C) were satisfied and hold the first assignment of error in appeal number C–960232 to be without merit.[1]

Our conclusion in appeal number C–960233, however, is that Baarlaer's first assignment is well taken. When Baarlaer made his telephone call to Beach on January 31, he was literally behind bars and distant from Beach. Additionally, Baarlaer's threat gave Beach an option. She could return his truck and his clothes and so avoid the kicking he threatened to give her. When the totality of circumstances is considered, a reasonable mind could conclude only that the threat was conditional to the degree that it could not provide a basis, in law, upon which to predicate a violation of R.C. 2919.25(C) because the physical harm threatened was not imminent, and because the threat could not have caused the victim to believe that she stood in jeopardy of imminent harm.

Baarlaer's second assignment of error in both appeals pivots upon the question of whether a reasonable trier of the facts should have believed Beach's testimony because she was "an admitted perjurer." Those assignments are overruled on the authority of *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

In summation, the motion to dismiss the appeals is overruled, the judgment in case number 96CRB–003008 (appeal number C–960232) is affirmed, and the judgment in case number 96CRB–003169 (appeal number C–960233) is reversed, for the reasons given above, and Baarlaer is discharged from further prosecution in that case.

*Judgment affirmed in part.*

HILDEBRANDT, P.J., PAINTER and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

---

1. See *State v. Nielsen* (1990), 66 Ohio App.3d 609, 585 N.E.2d 906, in which the Court of Appeals for Huron County held, *inter alia*, that the state was not required to prove that the spouse had actually sustained injury to support a conviction for domestic violence.