## CITY OF CLEVELAND

v.

## EARNHART.

Cleveland Municipal Court, Ohio,
Cuyahoga County.

No. 2000 CRB 042878.

Decided Nov. 1, 2000.

---

**42**

Lauren C. Moore, Chief Cleveland Prosecutor, and *Lorraine Coyne*, Assistant City Prosecutor, for the city of Cleveland.

*Mark Gardner*, for defendant.

RONALD B. ADRINE, Judge.

At the conclusion of the city's case, the defendant herein has moved this court for a directed verdict of acquittal pursuant to the provisions of Crim.R. 29(A). The defendant asserts in his motion that the prosecution has failed to bear its burden of proof on an essential element of this complaint that charges him with domestic violence, threats, in violation of R.C. 2919.25(C).

Crim.R. 29(A) mandates that the court grant the defendant's motion, if it finds that "the evidence is insufficient to sustain a conviction" of the offense. However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

The pertinent facts before the court, as presented by the prosecution and viewed in the light most favorable to it, are as follows.

The complainant testified that her husband, defendant Mark Earnhart, had suffered a debilitating injury to his back and neck sometime in June 1999. She related that over their more than seventeen years of marriage, they had experienced many stressful periods and that she had learned, during that timeframe, exactly what she had to do in order avoid upsetting him or "pushing his buttons." She testified that the defendant had never struck her and that the mistreatment that she had personally suffered at his hands was mostly mental. She maintained that following his injury, however, the defendant became increasingly difficult to deal with and that there were a number of occasions when the defendant physically disciplined their three boys in a manner that she found inappropriate.

On September 8, 2000, the Friday prior to the events now before the court, the defendant and the complainant became embroiled in an argument concerning the disciplining of one of their children. On direct examination, the complainant testified that, on that date, the defendant physically disciplined their eldest son, Joshua, by using a cutting board as a paddle. The complainant found defendant's disciplinary method excessive and stated that she was alarmed and feared for the safety of her children, as well as for her own physical well-being. She testified further that the defendant was unwilling to listen to her complaints about his actions, was verbally abusive, and, in her words, was not "acting very nice." Nonetheless, according to the complainant, the defendant made no threats against her on that day, either verbally or physically.

The complainant also testified that she was so unsettled by the defendant's actions that she gathered the children together, as soon as she thought it was safe to do so, and left the home. She indicated that they spent the weekend in a hotel, returning home the following Monday, only after all her available funds were expended.

At some time on the evening of Monday, September 11, 2000, the defendant, who had been asleep on a couch in the family home, awakened, and noticed that Joshua was wearing a shirt that the defendant had forbidden him to wear to school.

The defendant accused his son of disobeying him and began to verbally chastise the young man for wearing the shirt. The complainant came to Joshua's defense. Thereafter, the defendant turned on the victim and admonished her for interfering. He then told her, "You're lucky that I don't have a gun because if I did, I would kill you." It is this specific threat that gave rise to the instant complaint. Over the course of the next hour or so, the argument between the defendant and the complainant raged. At some point, the defendant approached the complainant, who had retreated to their front porch, and said to her, "If I had a gun, I would blow my brains out, right here in front of you!" The victim testified that she knew that the defendant did not own a gun on the date in question, nor did she fear or believe that he planned to immediately go out and obtain a gun, although she believed that he was capable of acquiring one if he desired to do so. She related a previous incident that had occurred a number of years before, where the defendant, following a family row, took a shotgun that he then owned and threatened to kill himself. According to the complainant, nothing ever became of the threat.

The complainant did not offer testimony, nor did her two oldest sons—both of whom testified at trial—as to any other explicit threats by the defendant during the course of the argument on September 11. In addition, no evidence was presented during the trial that the defendant ever became physically aggressive with the complainant at the time of the events that are the subject of this complaint. The complainant did not report the defendant's threats to the police immediately, but rather made the report several days after the fact.

The defense maintains that even when considered in the light most favorable to the prosecution, the defendant's statements constitute nothing greater than conditional threats. As such, so the argument goes, his actions cannot form the basis of this complaint because a conditional threat lacks the element of imminence that a complaint brought under R.C. 2919.25(C) requires.

*State v. Collie* (1996), 108 Ohio App.3d 580, 671 N.E.2d 338, is the lead case in Ohio on the issue of conditional threats in the domestic violence context.

Under *Collie,* the victim's belief that the physical harm flowing from the threat is imminent is an essential element of a charge under R.C. 2919.25(C). *Collie* holds that, in a prosecution for domestic violence under R.C. 2919.25(C), the utterance of a conditional threat to a family or household member, standing alone, is legally insufficient to support a conviction. That court went on to state that the state is allowed to produce evidence of the defendant's particular other acts against the same victim (particular as to dates, places, descriptions of what happened, etc.) to establish the basis for the victim's belief that the offender is about to cause imminent physical harm.

"Imminent" is defined in Webster's New International Dictionary (2 Ed.1957) 1245, as " 'near at hand, impending, threatening to occur immediately.' " *Cincinnati v. Baarlaer* (1996), 115 Ohio App.3d 521, 526–527, 685 N.E.2d 836, 840.

The prosecution appears to urge a totality-of-the-circumstances argument in asking that the court find that the complainant possessed a reasonable fear that the defendant would cause imminent physical harm to her. Such an approach was approved by the court in *State v. Johnson* (1994), 73 Ohio Misc.2d 1, 657 N.E.2d 383; however, the facts in *Johnson* are distinguishable and are not of much assistance to the prosecution here.

In *Johnson,* the defendant's threat against his former spouse, made over the telephone ("[D]on't let me have to kill you," *id.,* 73 Ohio Misc.2d at 2, 657 N.E.2d at 384), was immediately followed by the defendant's arrival at the complainant's place of employment, where he approached her rapidly, addressed her forcibly, and punched her boyfriend when he attempted to intervene. It was on the strength of this record that the *Johnson* court found that the surrounding circumstances demonstrated a rational basis for the complainant's fear of imminent bodily harm.

■ The other acts testimony that the prosecution has presented in the case at bar (*i.e.,* the defendant's inappropriate discipline of his children, mental and emotional abuse of his spouse, etc.) clearly establish that the defendant has behaved towards his family in a way that is reprehensible. Whether that conduct provided the complainant with a rational basis to fear that she was in imminent danger of physical harm at the defendant's hands is another matter.

■ The specific threat in question before this court, "*If* I had a gun, I *would* kill you," is clearly conditional, that is to say that a prerequisite must occur before the actor intends or is empowered to carry out the threat. None of the evidence presented by the prosecution in this case causes the court to conclude that the complainant had any reason to believe that the defendant had any intention to immediately complete the prerequisite, *i.e.,* obtain a gun, and complete the threat, *i.e.,* kill the complainant. The analysis of the *Collie* case in

**46**

*Cincinnati v. Baarlaer* could just as easily be applied to the facts here: "Mrs. Collie, to whom the language was directed * * *, testified that Mr. Collie did not own a gun and, moreover, that there was not a gun in the house. Under such circumstances, reasonable minds could conclude only that the accused had no means at hand to carry out the threat as made, *viz.,* to shoot his wife, and that its realization depended on Collie's possession of a weapon capable of firing a projectile." *Baarlaer,* 115 Ohio App.3d at 527, 685 N.E.2d at 840.

█ *Baarlaer* notes that the threat in *Collie,* as does the threat before this court, involved specific resort to the use of a firearm. As such, the threat in both *Collie* and the case before the court both required accomplishment by a specific means. Both *Collie* and *Baarlaer* focus on the means to carry out the specific threat made and both hold that where the specific means to carry out the threat is unavailable, reasonable minds can come to but one conclusion and that is that the accused is unable to carry out the threat.

In addition, nothing in the other acts evidence presented by the prosecution, concerning the defendant's prior negative interactions with the complainant, established a nexus between those acts and the defendant's threat. Thus, the prosecution was unable to show that the complainant reasonably relied upon any of the defendant's past acts as an indicator that the defendant was poised to do her physical harm at the time of the incident pending before the court.

### Judgment Entry

Upon due consideration, and for the reasons set forth above, the court finds that the defendant's Crim.R. 29(A) motion for directed verdict of acquittal is well taken and is, therefore, granted.

*Cause dismissed.*