OPINION
{¶ 1} Appellant, Thomas A. Diroll, II, ("Diroll"), appeals the judgment entered by the Ravenna Division of the Portage County Municipal Court. Diroll was convicted of domestic violence.
 {¶ 2} Katrina Smith and Diroll had a relationship in which they lived together for a brief time in 2003. The relationship produced one child. On August 19, 2006, Smith contacted the mother of Diroll's older child, picked the child up, and took her to Smith's *Page 2 
residence so she could visit with Diroll and Smith's child. She had the older child's mother's permission for this visit.
 {¶ 3} On August 20, 2006, Smith was having a birthday party for her son, who is not related to Diroll. During the birthday party, Diroll left a voicemail message for Smith indicating he wanted some of his belongings back. Smith returned Diroll's call after the party. During the conversation, Diroll called Smith foul names. In addition, he told her "[i]f [she] would try and contact his oldest daughter again, that he would kick [her] ass." Smith testified she felt threatened by this comment. However, after Smith ended the call with Diroll, she called him a second time. During this second phone call, Smith told Diroll to come to her house and retrieve his belongings.
 {¶ 4} On August 21, 2006, a complaint was filed against Diroll, charging him with domestic violence in violation of R.C. 2919.25(C), a fourth-degree misdemeanor. On August 24, 2006, Diroll was before the court for his initial appearance. Prior to this hearing, Diroll was shown a videotape explaining his rights at the Portage County Jail. At the hearing, the trial court asked Diroll if he had watched the videotape and whether he understood the rights explained on the tape. Diroll responded that he had. At the hearing, Diroll pled not guilty to the charge. Also, he requested the appointment of counsel.
 {¶ 5} On August 31, 2006, the trial court appointed the Portage County Public Defender's Office to represent Diroll. On September 1, 2006, the public defender's office entered a notice of appearance in this matter. This was a form letter, which does not indicate that the matter was assigned to a specific assistant public defender. *Page 3 
 {¶ 6} On September 5, 2006, the trial court issued a notice indicating that Diroll's trial was scheduled for September 7, 2006, at 9:15 a.m. On the morning of September 7, 2006, Diroll appeared for trial with Assistant Public Defender Aaron Snopek. At the very beginning of the trial, Attorney Snopek requested a continuance. He indicated the continuance was necessary to prepare for trial and to subpoena witnesses. The trial court asked Smith whether she cared if the case was continued. Smith responded that she was opposed to a continuance, citing the fact that she was starting a new job and going to school full-time. The trial court went forward with the trial, allowing Smith to testify, then continued the remainder of the trial for October 17, 2006. Also, prior to trial, Diroll orally requested a jury trial. The trial court denied this request.
 {¶ 7} Following the conclusion of the state's case-in-chief, Diroll moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion. Diroll's mother and brother testified for the defense. The trial court found Diroll guilty. Diroll was sentenced to 30 days in jail and given a $250 fine. The trial court suspended 15 days of the jail sentence and $150 of the fine. Further, the trial court stayed Diroll's sentence pending appeal.
 {¶ 8} Diroll raises ten assignments of error. We will address Diroll's assigned errors out of numerical order. Diroll's fourth assignment of error is:
 {¶ 9} "The trial court abused its discretion when it denied the defendant's requests for continuances."
 {¶ 10} The Supreme Court of Ohio has held that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial *Page 4 
judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger (1981),67 Ohio St.2d 65, 67. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." State v. Unger,67 Ohio St.2d at 67.
 {¶ 11} Attorney Snopek moved for a continuance at the beginning of the trial. After the trial court indicated it was going to deny the motion, Attorney Snopek moved, in the alternative, for a continuance until after lunch so he would have additional time to communicate with Diroll. The trial court denied this continuance as well, stating "the matter was set for 9:15 so I'm going to deny that motion and we're going to get started right now."
 {¶ 12} The trial court's decisions to deny Diroll's motions to continue were unreasonable. The public defender's office filed its notice of appearance on Friday September 1, 2006. This document was not signed by a particular attorney; instead, it was stamped "Portage County Public Defender's Office." The court was closed from September 2-4, 2006 for the Labor Day weekend. On September 5, 2006, the trial court issued its notice that Diroll's trial was scheduled for September 7, 2006. This notice was file-stamped September 5th; however, the stamp does not indicate what time it was filed. *Page 5 
 {¶ 13} At most, Attorney Snopek had 48 hours to prepare for trial. In reality, he was left with one working day, September 6, 2006, to prepare for trial. This is assuming he had no other assignments that day. This was clearly not sufficient time to prepare for trial, interview prospective witnesses, meet with his client, decide whether to file any pretrial motions, prepare to cross-examine adverse witnesses, and other necessary tasks.
 {¶ 14} Further, Diroll was prejudiced by this action. While only one witness testified on September 7, 2006, Smith was the complaining witness and her testimony directly led to Diroll's conviction.
 {¶ 15} The trial court abused its discretion by denying Diroll's motions to continue.
 {¶ 16} Diroll's fourth assignment of error has merit.
 {¶ 17} Diroll's fifth assignment of error is:
 {¶ 18} "The trial court prejudicially erred when it improperly denied the defendant's request for a jury trial."
 {¶ 19} Crim.R. 23(A) provides, in part:
 {¶ 20} "In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto." *Page 6 
 {¶ 21} After the court asked if there were any other preliminary matters, the following colloquy occurred regarding Diroll's request for a jury trial:
 {¶ 22} "MR. SNOPEK: There is your Honor. We have requested a jury trial.
 {¶ 23} "THE COURT: I think the demand has to be made ten days before the trial date, though.
 {¶ 24} "MR. SNOPEK: Your Honor, we were appointed less than ten days ago.
 {¶ 25} "THE COURT: Well, you can take that up with the Appellate Court if your client gets convicted. It's going to be denied."
 {¶ 26} The trial court's ruling was entirely unreasonable in that the public defender's office was appointed less than ten days prior to trial. Moreover, Crim.R. 23 provides that the request be made at least ten days prior to trial "or on or before the third day following receipt of notice of the date set for trial, whichever is later." (Emphasis added.) The notice of trial was filed on September 5, 2006. Thus, Diroll had until the end of business on September 8, 2006 to file his demand for a jury trial. Since Diroll demanded the jury trial on September 7, 2006, his demand was timely.
 {¶ 27} The state argues Diroll's demand needed to be in writing. We acknowledge the specific requirement in Crim.R. 23 that requires a demand for a jury trial be in writing. In State v. Palo, 11th Dist. No. 2002-A-0095, 2005-Ohio-6906, at ¶ 32, this court held that a trial court's statements on the record that the matter would be set for a jury trial were sufficient to alleviate the defendant's duty to file a written request for a jury trial. In addition, this court held that an oral demand is not sufficient to comply with Crim.R. 23. Id. Despite this language, we believe that the Palo decision permits, in *Page 7 
very limited circumstances, a defendant to preserve his constitutional right to a jury trial without strictly complying with the writing requirement of Crim.R. 23.
 {¶ 28} We note there are cases that hold an oral motion for a jury trial made at the beginning of a bench trial is insufficient. SeeState v. Patrick, 11th Dist. Nos. 2003-T-0166 2003-T-0167, 2004-Ohio-6688 and State v. Gillespie (Jan. 2, 2002), 5th Dist. No. CA-918, 2002 Ohio App. LEXIS 42. However, in both of these cases, the bench trial was held well after the defendant was charged. State v.Patrick, at ¶ 2, 31; State v. Gillespie, at *1-3. In addition, inGillespie, a notice of the trial date was filed over one month prior to the trial. State v. Gillespie, at *3. In the case sub judice, the time period for filing a written demand for a jury trial pursuant to Crim.R. 23 had not expired when the trial court began the bench trial. The trial court effectively shortened the time-period for filing a written demand for a jury trial by two days. Further, as the trial court had already denied his oral request for a jury trial and actually started the bench trial, any attempt by trial counsel to file a written request on September 7th or 8th would have been completely futile.
 {¶ 29} Finally, as we have already noted, Diroll's trial counsel had an extremely short amount of time to prepare for trial. The record does not indicate when Attorney Snopek became aware of Diroll's wish to have a jury trial. It may even have been the morning of trial. The earliest possible time Attorney Snopek could have met with Diroll was September 5, 2006, less than 48 hours before the start of the trial. In light of the extremely abbreviated time period between which Attorney Snopek met with Diroll and the start of the bench trial, we cannot hold that Attorney Snopek's failure to file a written demand for a jury trial amounts to Diroll waiving his constitutional right to a jury trial. *Page 8 
 {¶ 30} In light of the fact that trial counsel was appointed less than ten days prior to trial, the extremely short time between the notice of the trial being filed and the trial date itself, and the fact that the three-day period prescribed in Crim.R. 23 had not expired at the start of the bench trial, Diroll's oral demand for a jury trial was sufficient.
 {¶ 31} Diroll's fifth assignment of error has merit.
 {¶ 32} Diroll's second assignment of error is:
 {¶ 33} "The trial court prejudicially erred when it failed to properly inform the defendant of his rights during the arraignment."
 {¶ 34} A videotape was played for Diroll at the jail prior to his initial appearance. This videotape is apparently played for all defendants in Portage County Municipal Court. The tape contains general statements concerning topics such as traffic offenses, drug offenses, driving under the influence charges, and the possibility of deportation for noncitizens. In addition, the tape advises defendants of their right to remain silent, their right to counsel, their right to bail, their right to a continuance to obtain an attorney, and the right to a jury trial.
 {¶ 35} At his initial appearance, the trial court informed Diroll of the nature of the charges against him pursuant to Crim.R. 5(A)(1). Then, the trial court asked Diroll if he had watched the videotape shown at the jail and if he understood the rights explained in the video. Diroll answered both questions in the affirmative.
 {¶ 36} Diroll notes that this court has previously held that a "one-sided `rights' colloquy addressed to all of the defendants, en masse, fails to provide the requisite discourse between the court and the accused to ensure comprehension of these rights." State v.Bayer (1995), 102 Ohio App.3d 172, 180. In response, the state cites this *Page 9 
court's recent opinion in State v. Donkers for the proposition that a videotape explaining a defendant's rights is sufficient. See State v.Donkers, 170 Ohio App.3d 509, 2007-Ohio-1557, at ¶ 34. This court held that "[s]uch procedure could be permissible to `inform' the defendant of her rights" at an initial hearing. Id. However, the court conducted a lengthy analysis regarding how the videotape was deficient in that matter. Id. at ¶ 35-54.
 {¶ 37} We believe, as a general matter, that a trial court is permitted to use a videotape to inform defendants of their rights. However, it is crucial to remember that the trial court is ultimately responsible for ensuring that defendants are informed of their rights and understand those rights, regardless of the specific method utilized. If the court cannot make the record clear in this regard, there will be a risk of reversal for failure to properly advise.
 {¶ 38} Aside from the procedure employed by the trial court, we find the specific language used to inform on the videotape is inadequate in the case sub judice. In regard to the right to a jury trial, the videotape states:
 {¶ 39} "You also have the right to a trial by a judge or a jury, if you so request. If the case is punishable by more than six months in jail, a jury trial is automatic unless you waive that right."
 {¶ 40} This fails to adequately inform the defendant of two pertinent rules that a defendant must know if he or she is to preserve the constitutional right to a jury trial. First, Crim.R. 5(A)(5) mandates the trial court to "inform the defendant * * * [o]f his right, where appropriate, to jury trial and the necessity to make demand therefor in petty offense cases." Second, Crim.R. 23 states that this demand must be in writing and *Page 10 
within a certain time frame. Thus, the best practice would be for the trial court to inform the defendant that in order to preserve the right to a jury trial, you must demand a jury trial, in writing, pursuant to the time period prescribed in Crim.R. 23.
 {¶ 41} The tape in this case is ambiguous, in that it could be interpreted to mean that a defendant simply may request atrial, either jury or bench. It did not specifically inform Diroll of the necessity to demand a jury trial in writing in his case. This is particularly concerning in the case sub judice, as the trial court proceeded to a bench trial due to Diroll's failure to demand a jury in writing more than ten days prior to trial.
 {¶ 42} Under the facts and circumstances of this case, the trial court erred in failing to adequately inform Diroll of the necessity to demand a jury trial in writing.
 {¶ 43} Diroll's second assignment of error has merit.
 {¶ 44} Collectively, the errors noted in our analysis of Diroll's second, fourth, and fifth assignments of error deprived Diroll of his constitutional right to a jury trial. We acknowledge that the trial court has an interest in expediting its docket. However, the trial court may not circumvent a defendant's right to a jury trial in pursuit of that goal.
 {¶ 45} Diroll's first and ninth assignments of error are:
 {¶ 46} "[1.] The trial court prejudicially erred when it found the defendant guilty of domestic violence under R.C. 2919.25(C) because the defendant could not have been so found as a matter of law.
 {¶ 47} "[9.] The trial court prejudicially erred because its verdict was based upon insufficient evidence."
 {¶ 48} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is *Page 11 
sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 49} Diroll was charged with domestic violence, in violation of R.C.2919.25(C), which provides:
 {¶ 50} "(C) No person, by threat or force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
 {¶ 51} In addressing this issue, it is important to carefully examine the relevant events that occurred on August 20, 2006. Some of the following times were verified by copies of Diroll's cell phone bill. First, shortly after 2:00 p.m., Diroll left a message on Smith's answering machine. At 4:19 p.m., Smith called Diroll on his cell phone. This phone call lasted 16 minutes. It was during this phone call that Smith and Diroll were arguing and that Diroll told Smith "[i]f [she] would try and contact his oldest daughter again, that he would kick [her] ass." Smith testified that she hung up the phone and ended the call. Immediately thereafter, at 4:35 p.m., Smith again called Diroll on his cell phone. This second phone call lasted two minutes. During this call, Smith told him to come get his things from her house. At trial, Smith testified that she told Diroll his things were going to be on the front porch of her house. After the second call, Smith went to the Ravenna Police Department and reported Diroll's threat. *Page 12 
 {¶ 52} For purposes of a sufficiency of the evidence analysis, Diroll threatened Smith. Smith directly testified to this fact on several occasions. Thus, there are two primary questions for our review: (1) was Diroll's threat "imminent" and (2) did Smith believe that she was in danger of physical harm.
 {¶ 53} First, we will address the imminent nature of the threat. The First Appellate District, in analyzing a case under R.C. 2919.25(C), has noted that "`imminent' means `threatening to occur immediately.'"State v. Collie (1996), 108 Ohio App.3d 580, 583, quoting Webster's Second International Dictionary (1959) 1245. The Tenth Appellate District has applied a definition of "`imminent' as `about to occur at any moment.'" In re Jenkins, 10th Dist. No. 2003CA00330, 2004-Ohio-2657, at ¶ 14, quoting Webster's II New Riverside University Dictionary (1984) 611.
 {¶ 54} Diroll cites Cincinnati v. Baarlaer in support of his argument that a threat made over the telephone is not sufficient for a violation of R.C. 2919.25(C), because it is not imminent. Cincinnati v.Baarlaer (1996), 115 Ohio App.3d 521. It is important to note that the threatening phone call in that case was made by the defendant from jail. Id. at 523. The First Appellate District noted the defendant was "literally behind bars." Id. at 528. In this matter, Diroll was not in jail. However, there was evidence presented that he was at his mother's residence when he made the threat. Diroll's mother's house and Smith's house are several miles apart, making it less likely that Diroll could "immediately" or "at any moment" inflict physical harm upon Smith.
 {¶ 55} Moreover, Smith's testimony suggests that she did not believe Diroll's threat was imminent. She testified that after Diroll made the threat, she called him back and told him to get his things. She testified that she gathered Diroll's things, placed *Page 13 
them on her front porch, locked her doors, then left her residence. The fact that Smith felt she had enough time to gather Diroll's belongings and place them on her front porch strongly suggests that she did not believe Diroll's threat was imminent.
 {¶ 56} Next, we address Diroll's contention that the threat was conditional. A conditional threat is one where "a prerequisite must occur before the actor intends or is empowered to carry out the threat."In re Jenkins, 2004-Ohio-2657, at ¶ 26. Again, the threat in this matter from Diroll was, "if [Smith] would try and contact his oldest daughter again, that he would kick [her] ass." This threat was a conditional threat, in that the prerequisite for Diroll's threatened action was Smith contacting his daughter.
 {¶ 57} "[Generally, a conditional threat, standing alone, is insufficient to satisfy the imminent physical harm element." Jackson v.Adams (Nov. 8, 2001), 4th Dist. No. 01CA2, 2001 Ohio App. LEXIS 5134, at *7.
 {¶ 58} In this matter, Diroll made the threat over the telephone from another location. Apparently, Smith did not view the threat as imminent, as she took time to gather Diroll's possessions and place them on her front porch. In addition, the threat was conditional, in that it threatened violence only if Smith engaged in the prerequisite behavior, i.e., contacting Diroll's daughter. Taken together, these factors suggest that Diroll's threat was not imminent.
 {¶ 59} More significantly, the evidence presented did not support the state's position that Smith believed she was in danger of imminent physical harm. Smith testified that she and Diroll were mutually arguing during the 16-minute phone call. During that time, Diroll made the threat at issue in this matter. Following the threat, Smith testified that she "might have argued for a few minutes with him." Smith testified *Page 14 
that she hung up on Diroll to end the call. Then, after Diroll's threat, Smith called Diroll a second time and told him to come to her house and retrieve his belongings. This action is entirely inconsistent with a belief that she was in danger of imminent physical harm.
 {¶ 60} After telling Diroll to come to her residence and get his things, Smith gathered Diroll's belongings and placed them on her front porch. This action suggests either (1) Smith did not believe she was in danger of physical harm as a result of a potential encounter with Diroll at her residence or (2) she did not believe Diroll could get to her residence prior to her placing his things on the front porch, locking her doors, and leaving. Either way, it cannot be said that Smith believed she was in danger of imminent physical harm.[1]
 {¶ 61} The state's evidence, when viewed in a light most favorable to the state, was insufficient for a trier of fact to find Diroll guilty of domestic violence.
 {¶ 62} Diroll's first and ninth assignments of error have merit.
 {¶ 63} Diroll's remaining assignments of error are:
 {¶ 64} "[3.] Defense counsel rendered ineffective assistance of trial counsel in violation of the defendant's federal and state constitutional rights.
 {¶ 65} "[6.] The trial court abused its discretion when it improperly permitted the prosecution to present evidence of a May 2003 fight between the complaining witness and the defendant because this evidence was irrelevant, unfairly prejudicial, confusing, improper character evidence, and/or improper evidence of alleged other wrongs or acts. *Page 15 
 {¶ 66} "[7.] In the alternative to the Sixth Assignment of Error, if evidence of the May 2003 fight between the complaining witness and the defendant was properly admitted, then the trial court abused its discretion when it failed to permit the defendant to present evidence of the fight for purposes of rebutting the prosecution's evidence.
 {¶ 67} "[8.] The trial court abused its discretion when it improperly excluded evidence that would have directly rebutted the complaining witness's claim that she was threatened and was relevant to the `imminent threat' element of R.C. 2919.25(C).
 {¶ 68} "[10.] The trial court prejudicially erred because its verdict went against the manifest weight of evidence."
 {¶ 69} We have found merit in Diroll's second, fourth, fifth, first, and ninth assignments of error. Accordingly, Diroll's remaining assignments of error are moot. App.R. 12(A)(1)(c).
 {¶ 70} The judgment of the trial court is reversed. This matter is remanded for further proceedings consistent with this opinion. Specifically, the trial court is instructed to enter a judgment of acquittal.
CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur.
[1] While we have held that Diroll's threat did not constitute a violation of R.C. 2919.25(C), we do not condone his actions. Diroll's conduct may have violated the menacing or aggravated menacing statutes, R.C. 2903.21 and 2903.22. See State v. Collie, 108 Ohio App.3d at 582. However, Diroll was only charged with a violation of R.C.2919.25(C). *Page 1