[Cite as *State v. Deveny*, 2017-Ohio-560.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-7 |
| | : | |
| v. | : | T.C. NO. 15CRB1209 |
| | : | |
| MARCIA L. DEVENY | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___17th___ day of _____February_____, 2017.

. . . . . . . . . . .

ANDREW JOHNSTON, Atty. Reg. No. 0088008, 215 W. Water Street, P. O. Box 310, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

C. RALPH WILCOXSON, II, Atty. Reg. No. 0061974, 211 Kenbrook Drive, Suite #5, Vandalia, Ohio 45377
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Marcia Deveny appeals from a judgment of the Municipal Court of Miami County, which found her guilty of domestic violence.   She was sentenced to 30 days in jail, all of which was suspended on the condition that she have no contact with the victim, and she was fined $100.   At Deveny's request, her sentence was stayed pending this

appeal.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

## I.    Procedural History

{¶ 3} On Sunday, April 19, 2015, Deveny and her husband, Buff Anspaugh, had decided to separate and to file for divorce. Anspaugh went to the house that day to collect his belongings, and a confrontation ensued during which Deveny allegedly threatened to shoot Anspaugh if he went into their barn to get some horses.   The dispute was diffused by the arrival of two sheriff's deputies, and Anspaugh left with the horses.

{¶ 4} On April 20, 2015, Anspaugh filed a complaint alleging that Deveny had committed domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree.   Deveny pled not guilty and had a bench trial on September 1, 2015.   She was found guilty and sentenced as described above.

## II.    Sufficiency and Weight of the Evidence

{¶ 5} Deveny raises two assignments of error on appeal.   In her first assignment, Deveny contends that the trial court erred in denying her Crim.R. 29(A) motion for acquittal at the close of the State's case.[1]   She contends that Anspaugh's testimony and actions failed to demonstrate that he was in fear of imminent harm.   In her second assignment of error, she argues that her conviction was against the manifest weight of the evidence because, even if her threat were believed, "the conditions of the threat were

---

[1] At the close of the State's case, the trial court "reserve[d] ruling" on the Crim.R. 29 motion, which is not permitted under Crim.R. 29(A).   However, the motion was not renewed at the close of all the evidence, the court did not address it at any time, and, for purposes of appeal, Deveny frames the issue as if the motion were denied.   In certain circumstances, a reservation of a ruling at the close of the State's case is an implied denial.   *State v. Hubbard*, 8th Dist. Cuyahoga No. 83389, 2004-Ohio-5204, ¶ 10. Regardless, we will address this argument as if the motion had been denied.

never achieved," i.e., Anspaugh did not try to go into the barn.

{¶ 6} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 7} When reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 8} The complaint alleged that Deveny had violated R.C. 2919.25(C), which states that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or

household member." Deveny does not dispute that she and Anspaugh were family or household members.

{¶ 9} The State's evidence at trial was as follows:

{¶ 10} According to Anspaugh, he had lived with Deveny until the morning of Sunday, April 19, 2015, but he and Deveny had decided to divorce; on the morning of April 19, they agreed by phone that Anspaugh would come to their property in the afternoon to collect his belongings. Anspaugh brought several friends and several vehicles with him to collect his personal property, which included three horses. The men arrived at the marital home between 2 and 3 o'clock. The property consisted of several buildings, and numerous other people were also on the property that afternoon, particularly in the vicinity of a barn and arena.

{¶ 11} At first, the collection of Anspaugh's belongings from several parts of the property went fairly smoothly. Deveny did call the sheriff's department around 2:30, apparently in anticipation that trouble might develop, but when Deputy Travis Boggs arrived, he did not find any problems. Boggs informed Deveny and Anspaugh that the sheriff's department did not provide peace calls (i.e., he could not remain there to oversee the process and keep the peace), but they could call him to come back if they experienced any problems.

{¶ 12} By approximately 5:00, Anspaugh had collected most of his belongings; all that remained were the three horses, which were in the barn. According to Anspaugh, the horses belonged to him, he and Deveny had discussed their removal earlier in the day, and he had brought a horse trailer for that purpose. However, when the horses were all that remained to be loaded, Deveny refused to get them and said that she did

not want Anspaugh in the barn. Anspaugh and one of his friends, Terry McKinney, testified that Deveny threated to shoot Anspaugh if he (Anspaugh) went inside the barn, and yelled for her friend Arlene to "get her [Deveny's] gun" because she (Deveny) was going to shoot Anspaugh. Anspaugh and McKinney testified that they believed Deveny was not joking when she made these statements. Anspaugh knew that a rifle and a .357 revolver were in the house; a third gun had been loaded into the McKinney's truck earlier in the afternoon.

{¶ 13} Anspaugh testified that he believed "without a doubt" that he would be shot if he tried to go into the barn, so he did not. He also did not call the sheriff's department, but Deveny did, and Deputy Boggs returned to the house.

{¶ 14} Deputy Boggs testified about his two visits to the Deveny-Anspaugh house on the afternoon of April 19, 2015. He stated that everyone appeared to be getting along at the time of his first visit, but that Deveny and Anspaugh were arguing about the horses when he arrived the second time. He spoke to Deveny first, and then to Anspaugh, informing each of them that the ownership of the horses was a "civil matter" which he could not resolve. Anspaugh reported that Deveny had threatened him, and Deveny admitted to Boggs that she had threatened to shoot Anspaugh if he went into the barn, and she did not assert that she had been joking. Boggs did not recall questioning Deveny about whether she had yelled to her friend to bring a gun out of the house. Boggs and another deputy also talked with numerous other people who were at the property, some of whom had witnessed the "very loud" argument between Deveny and Anspaugh.

{¶ 15} Before the deputies' departure, Deveny permitted Anspaugh to leave with

his horses that afternoon. Anspaugh indicated to Boggs that he wanted to pursue charges against Deveny for the threat.

{¶ 16} Deveny and several other witnesses testified for the defense.

{¶ 17} Deveny testified that she had not been expecting Anspaugh to come for his personal property on Sunday, April 19; she stated that the barn was full of boarders and people taking lessons that day, and that they had agreed he would come on Monday. Deveny admitted she had told the deputies on the day of the incident that she was not sure if she had threatened Anspaugh, but she testified at trial that she was sure she had not done so or asked anyone to bring her a gun. Deveny told Anspaugh he could not take the horses because she needed them for her businesses. According to Deveny, she agreed to let Anspaugh take the horses with the understanding that he would not press charges against her, but he pressed charges anyway.

{¶ 18} Several boarders or parents of students taking riding lessons from Deveny testified that they had been present on April 19 and had witnessed or overheard parts of the argument between Deveny and Anspaugh. These witnesses testified that they heard yelling and screaming by both parties, but had not heard Deveny threaten Anspaugh. They also testified that they had not been questioned by the sheriff's deputies about what they had witnessed. One of these witnesses testified that Anspaugh was "definitely the aggressor" in the argument with Deveny.

{¶ 19} In its decision and entry, the trial court found that the State's witnesses were credible and that the defense witnesses, "with the exception of the Defendant herself, were not." With respect to Deveny's testimony, the court focused on her admission that she did not recall whether she had threatened Anspaugh with a gun. The

court found that Deveny had threatened to shoot Anspaugh, that Anspaugh had believed that Deveny would cause him imminent physical harm, and that Anspaugh was a family or household member of Deveny. Thus, it found Deveny guilty of domestic violence.

{¶ 20} The testimony of Anspaugh and McKinney, if believed, provided sufficient evidence to support each element of domestic violence. Thus, Deveny's conviction was supported by sufficient evidence.

{¶ 21} Deveny argues that her conviction was against the manifest weight of the evidence because her threat was "conditional"; in other words, she implies that there was no imminent threat to Anspaugh, as required for a domestic violence conviction. Courts have found that the danger posed by a threat is not imminent where the person making the threat has no means of fulfilling the threat at the time it is made. For example, where a threat specifically includes the use of a gun, but no gun is present and there is no other violence, a belief that physical harm was imminent might not be reasonable. However, a general threat, i.e., one not tied to a specific means, might reasonably induce fear of imminent harm. *See, e.g., City of Cincinnati v. Baarlaer*, 115 Ohio App.3d 521, 527, 685 N.E.2d 836, 840 (1st Dist.1996), distinguishing *State v. Collie*, 108 Ohio App.3d 580, 671 N.E.2d 338 (1st Dist. 1996). Moreover, a threat to cause physical harm need not be verbalized; it may be implied by the offender's actions. *State v. El-Hardan,* 2d Dist. Montgomery No. 24293, 2011-Ohio-4453, ¶ 46, citing *State v. Terzo,* 12th Dist. Butler No. CA2002-08-194, 2003-Ohio-5983, ¶ 18.

{¶ 22} The State's evidence established that Deveny threatened to shoot Anspaugh and that there were guns in the vicinity, if not immediately at hand. Moreover, the State's evidence showed that, in addition to threatening Anspaugh directly, Deveny

called out to a friend to bring her (Deveny) a gun, because she might need to shoot Anspaugh if he went to the barn. Under these circumstances, a trier of fact could reasonably find that Deveny's threat and other actions caused Anspaugh to believe he was in imminent danger, notwithstanding that he could arguably avoid the danger by complying with Deveny's demands. Based on the evidence presented, the trial court did not clearly lose its way or create a manifest miscarriage of justice in finding Deveny guilty, and her conviction was not against the manifest weight of the evidence.

{¶ 23} The assignments of error are overruled.

### III. Conclusion

{¶ 24} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Andrew Johnston
C. Ralph Wilcoxson, II
Hon. Gary A. Nasal