CITY OF HAMILTON, Appellee,

v.

CAMERON, Appellant.

[Cite as *Hamilton v. Cameron* (1997), 121 Ohio App.3d 445.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–06–117.

Decided June 2, 1997.

*Samuel D. Borst,* Hamilton City Law Director, for appellee.

*Jonathan N. Fox,* for appellant.

WALSH, Judge.

Defendant-appellant, Bobby J. Cameron, appeals a decision of the Hamilton Municipal Court finding that he committed domestic violence by violating R.C. 2919.25. We reverse.

Appellant and his wife, Darlene Cameron ("Darlene"), had an argument on February 22, 1996. Darlene wanted to discuss matters involving their twelve-year-old son. Darlene testified that appellant did not want to discuss the matters at the time, and that she continued to "push the issue." During the argument, appellant claims that he said, "I'd probably have to blow your head off to get you to shut up." Darlene testified, "He was telling me to shut up. He said something about blowing my head off that would necessitate, be necessary in order for that to occur, to get me to shut up." Deputy Michael Jacobs testified that Darlene told him that appellant said that he was going to blow her head off.

After the argument had finished, Darlene went into another room of the house and called her mother because she was "still upset and angry." Darlene told her mother about the argument with appellant. After the call, Darlene's mother called Darlene's sister, and then Darlene's sister called the police and reported that appellant had threatened to shoot Darlene.

Officers arrived at appellant's home approximately forty-five minutes after the argument and found no disturbance at the home. The officers found appellant in the living room working on a computer with their twelve-year-old son, and Darlene in the back bedroom watching their six-year-old son play Nintendo. The officers noticed a shotgun on a gun rack in the home and asked if appellant had any more weapons. Appellant told the officers that there was another shotgun in the closet. Both of the shotguns were loaded.

A complaint was filed against appellant, which was signed by Darlene. The complaint states that appellant violated "R.C. 2919.25(A)(B)" by threatening "to shoot his wife, Darlene, with a shotgun. Two shot guns were loaded and and [*sic*]

in reach of couples [*sic*] children." On the back of the complaint was a written statement that reads: "Mr. Cameron did threaten to shoot his wife, Daelene [*sic*], with a shotgun. Two shotguns were loaded and available and in reach of couples [*sic*] children." During appellant's trial, Darlene testified as to why she signed the complaint against appellant.

"Q. Did you then subsequently come down [to the police station] and sign a complaint?

"A. After the fact, [appellant] and I [were] talking together, we were told someone had to go. There was I guess [a] new law because I had read it in the journal. But like, if they are called on a domestic violence call, someone gets arrested. We were told that someone had to go and I heard my husband say in the living room, 'No, I don't want to sign a complaint against my wife.' So, I know one officer came in and asked [Officer] Jacobs will she sign a complaint, and he said yes. I said nothing.

"Q. And you subsequently ended up signing it?

"A. I did, but I didn't know I had the choice between doing it and not doing it.

" * * *

"Q. Did your complaint say that he threatened to shoot you with a loaded shotgun on February 22, 1996 at 9:30 P.M.?

"A. Yes it does.

"Q. That is your signature on the bottom of that correct?

"A. That is my signature.

"Q. You read that both the front and back where you signed that complaint twice with the same allegations?

"A. Actually, I didn't read it. It was prepared, I believe that was the desk sergeant at the police station next door. My children and I waited in the lobby for over an hour and a half. We were very tired, very thirsty. Very upset, everyone. The kids, because of their tiredness. They were very testy. And when I [was] finally call[ed] in to sign it, I can recall the person who presented it to me saying that he just wrote down what was in the report. I just signed it. I just wanted to go home. I knew [what] I was there for and I just signed it. I didn't read it."

Darlene also testified that she signed a restraining order against appellant because "I was just thinking separation, distance at my control. [If] that's what it took, then I wanted time to think. I just wanted time." Darlene testified that at the time she was not in fear of appellant and that he never made a movement towards the shotgun on the gun rack. Darlene did not testify that she believed

that appellant intended to carry out the threat of shooting her, or that she believed that she was in imminent physical harm. No evidence was presented of prior acts by appellant showing that he had harmed or had threatened to harm Darlene before the incident. Appellant claims that he did not make the statement intending to threaten Darlene.

The municipal court judge sentenced appellant for a violation of "R.C. 2919.25." Appellant was fined $50 plus court costs, and appellant's shotguns were confiscated. Appellant presents one assignment of error:

"The trial court erred to the prejudice of the defendant-appellant in finding the defendant-appellant guilty of domestic violence when an essential element of the crime is lacking."

Appellant argues that an essential element of the crime he was charged with is lacking. We agree. An appellate court will not disturb the decision of a trial court "unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts.

" * * * Moreover, the relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.

The complaint against appellant charges him with a violation of "R.C. 2919.25(A)(B)." The motion for a temporary protection order uses language similar to R.C. 2919.25(A) and (B). The judgment entry states that appellant violated "R.C. 2919.25." R.C. 2919.25 reads as follows:

"(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

"(B) No person shall recklessly cause serious physical harm to a family or household member.

"(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

■ "The elements of the crime of domestic violence (R.C. 2919.25[A] ) are that a charged defendant must have knowingly caused, or attempted to cause, physical harm to a family or household member." *State v. Suchomski* (1991), 58 Ohio St.3d 74, 567 N.E.2d 1304, 1304–1305. Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(C). After reviewing the record, we cannot find any

evidence that appellant caused physical harm to Darlene, or even an allegation by Darlene that she had been physically harmed. A violation of R.C. 2919.25(A) can also be demonstrated by a showing that appellant attempted to commit physical harm. The evidence in the record shows that the only act appellant committed was the statement "I'd probably have to blow your head off to get you to shut up." No evidence was presented to show that appellant knowingly attempted to carry out the threat. Accordingly, we hold that the trial court erred in finding appellant had committed domestic violence by violating R.C. 2919.25(A) or (B).[1]

Although the complaint does not state that appellant had violated R.C. 2919.25(C), the language of the complaint does state one of the elements of R.C. 2919.25(C) by stating that appellant "threatened to shoot his wife." However, in order to show that a person violated R.C. 2919.25(C), "[i]t must be shown by the prosecution that the victim believed the offender would cause her imminent physical harm at the time the incident took place." *State v. Sayres* (Mar. 26, 1997), Washington App. No. 95CA30, unreported, 1997 WL 142361; *State v. Collie* (1996), 108 Ohio App.3d 580, 584, 671 N.E.2d 338, 340–341. The state of mind of the victim is an essential element of this crime. *Sayres,* following *State v. Denis* (1997), 117 Ohio App.3d 442, 690 N.E.2d 955. While it is true that victims may change their testimony to protect a spouse, there must be some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm.

Under the facts of this case, we find no violation of R.C. 2919.25(C). The record shows that Darlene did not call the police and that she remained in the house. Further, when the police arrived, Darlene was watching the six-year-old play Nintendo, and the twelve-year-old was with appellant. The only evidence presented is that appellant uttered a statement which could at best be described as a conditional threat, and that the means to carry out the threat were available to appellant. No evidence was presented that appellant ever made a motion toward a shotgun, or that he took any other action or made any other statement in furtherance of the threat which would cause the victim to believe she would suffer imminent physical harm. The victim in fact stated that she did not believe the threat.

Further, R.C. 2919.25(C) is not a lesser offense of R.C. 2919.25(A) or (B) because R.C. 2919.25(A) or (B) can be violated without the victim believing that the offender "will cause imminent physical harm." *State v. Rihm* (1995), 101 Ohio App.3d 626, 628, 656 N.E.2d 372, 374. Because R.C. 2919.25(C) is not a

---

1. R.C. 2919.25(B) substitutes the culpable mental state of "recklessly" for "intentionally" as described in paragraph (A). The analysis of the harm element is the same.

lesser offense of R.C. 2919.25(A) or (B), the complaint against appellant cannot be amended to show a violation of R.C. 2919.25(C) because it would change the identity of the crime, and would be a violation of Crim.R. 7(D). *Id.* at 628, 656 N.E.2d at 373–374. The court's order is hereby vacated.

Accordingly, the judgment of the trial court is reversed. All fines paid and/or property confiscated is to be returned to appellant. Judgment is entered for appellant.

*Judgment reversed.*

WILLIAM W. YOUNG, P.J., concurs.

POWELL, J., dissents.

POWELL, Judge, dissenting.

I must respectfully dissent.

The record in this case shows simply that the defendant threatened to blow his wife's head off to get her to shut up; that the threat worked and the victim "shut up"; that the victim called her family, who in turn called the police; that the police arrived at the victim's home forty-five minutes later and found the victim in the bedroom with her child, still "visibly shaken"; that the officers found loaded firearms in the room with the defendant; that defendant acknowledged making the statement; and that the victim signed the complaint and the restraining order so she would have time to think.

Applying the standard advanced by the Ohio Supreme Court in *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503, as cited by the majority, I feel that there is ample evidence upon which the trial court could rely to find the essential elements of the crime proven beyond a reasonable doubt. The trial court judge is the fact finder, not this court. The trial judge clearly did not believe the victim's testimony that would protect her spouse, but rather chose to believe the disinterested police officer's testimony as to the victim's state when they found her still "visibly shaken" forty-five minutes later. This evidence is sufficient for the fact finder to infer that the victim thought that the accused would cause her imminent physical harm.

As to the complaint's deficiencies, these matters were not raised at trial or on appeal and therefore may not be raised *sua sponte* by the majority for the first time in the opinion. See *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526–527.