[Cite as *State v. Rhoads*, 2013-Ohio-152.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-05-040 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/22/2013 |
| - vs - | | |
| | : | |
| BRYAN RHOADS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2011 CRB 5639


D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North 3rd Street, Batavia, Ohio 45103, for plaintiff-appellee

Hapner & Hapner, Jon C. Hapner, 127 North High Street, Hillsboro, Ohio 45133, for defendant-appellant


**S. POWELL, J.**

{¶ 1} A defendant argues that his domestic violence conviction should be overturned because he was rushing for a place at a gas pump, not threatening his former girlfriend with his vehicle. We affirm the domestic violence conviction, finding the judgment is supported by sufficient evidence and is not contrary to the manifest weight of the evidence.

{¶ 2} Defendant-appellant, Bryan E. Rhoads, was charged in 2011 in Clermont

County Municipal Court with misdemeanor domestic violence after it was alleged that he used his pickup truck to threaten the victim -- his former girlfriend and mother of his minor child. Rhoads was also charged with violation of a protection order. The trial court heard the case against Rhoads and found him guilty of both charges. The protection order violation was not contested at trial and is not the subject of this appeal.

{¶ 3} Rhoads asserts in his single assignment of error that:

{¶ 4} THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.

{¶ 5} Rhoads argues the trial court erred by overruling his Crim.R. 29 motion for acquittal and by finding him guilty of the domestic violence charge. Specifically, Rhoads argues that there was no evidence that he knowingly caused the victim to believe that he would cause imminent physical harm and no evidence that the victim held a "reasonable belief" that he would cause her imminent harm.

{¶ 6} The record reveals that Rhoads was charged with domestic violence under R.C. 2919.25(C), which states in pertinent part, that no person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member. "Family or household member" also includes the natural parent of a child when the offender is the child's other natural parent. R.C. 2919.25(F)(1).

{¶ 7} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result, or will probably be of a certain nature." 2901.22(B) "A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Id.*

{¶ 8} R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "Imminent" has been

defined as "near at hand or impending," or defined as a belief of the victim that harm would occur immediately or, a belief that the accused will cause immediate physical harm. *State v. Fisher*, 197 Ohio App. 3d 591, 2011-Ohio-5965, ¶ 17 (2nd Dist.).

{¶ 9} "Physical harm" is defined in R.C. 2901.01(A)(3) as any injury, illness, or other physiological impairment, regardless of its gravity or duration. *See State v. Kellum*, 12th Dist. No. CA2009-03-081, 2009-Ohio-6743, ¶ 15-16.

{¶ 10} In order to show that a person violated R.C. 2919.25(C), it must be shown by the prosecution that the victim believed the offender would cause her imminent physical harm. *See Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997). The state of mind of the victim is an essential element of this crime. *Id*.

{¶ 11} The record reveals the following testimony pertinent to this appeal. In 2009, the victim sought and received a protection order against Rhoads in Adams County, Ohio. On the day of this incident, the victim arranged to meet a male friend for dinner, and was driving through Clermont County when she saw an incoming call on her cell phone. She said the call was from Rhoads' number, but she did not answer it. The victim and her friend were in separate vehicles and decided during a cell phone conversation to stop at a gas station for fuel. They pulled their vehicles on either side of the same pump.

{¶ 12} The victim indicated that just as she stopped her vehicle at the pump, Rhoads "charged at me with his truck." She explained that Rhoads drove his pickup truck straight toward her vehicle and slammed on his brakes. She said, "When he slammed the brakes on[,] both our heads went forward." [sic] According to the victim, Rhoads' vehicle came to a stop "right in front of me." She indicated that she could not see the front license plate of Rhoads' vehicle from where she was sitting in her vehicle, and estimated that the two vehicles were three feet from each other.

{¶ 13} The victim said she did not know at first that Rhoads was driving the vehicle but

Rhoads lifted his head, leaned into the windshield area, grinned, "jerked his head back and forth and then just sat there and glared at me for probably about 15 seconds." She said Rhoads backed his vehicle and pulled to another pump at the station.

{¶ 14} The victim indicated that she was shaking and was "sick to her stomach." She said she thought he was going to hit her. When asked why she was fearful, the victim explained that Rhoads had been violent during their relationship, indicating that he had hit her, chased her with a knife, and threatened to kill her on numerous occasions. She said, "He's run me off the road several times, I mean literally all the way off the road. So I had no reason to think that this time would be any different than the others."

{¶ 15} The victim's friend testified that he was pumping gas into his vehicle when he saw a vehicle coming from his right at a high rate of speed. He said the driver of the truck had a big grin on his face. The friend acknowledged that the two vehicles were partially obscured from his view by the gasoline pumps, but estimated they may have stopped 10 to 15 feet apart.

{¶ 16} After Rhoads moved to another pump, the victim walked over to the friend's car and told him that Rhoads was the driver of the pickup truck. The friend said the victim was shaking so badly, she was unable to remove her credit card from her purse. He told the victim to take a photo of Rhoads' vehicle with her cell phone.

{¶ 17} The friend testified that as he began pumping gas into the victim's vehicle, Rhoads walked toward them and asked where his child was. The victim indicated Rhoads used a "hateful" tone and asked three times where the child was. She said she walked to the rear of the vehicle, which placed her friend between Rhoads and where she was standing. The victim did not respond, but the friend told Rhoads the child was waiting at the pre-arranged pickup location several miles away.

{¶ 18} The victim said she did not report the incident that day because she sought her

attorney's advice concerning whether she should report the incident to Adams County authorities because of the protection order. She indicated she reported the incident to Clermont County law enforcement at the first opportunity her work schedule permitted.

{¶ 19} Rhoads argued at trial that he was rushing to the gas pump to get a place at the pump. He presented the testimony of his female companion who was sitting in the passenger seat of the pickup truck that evening. The companion said they were shopping in the area for her business and had just left a nearby restaurant when they stopped to get gasoline. She said they were "sitting at the gas pump waiting to pull up to the gas tank so Bryan could get some gas. As we were doing that a vehicle, we butted together, we were nose to nose." [sic]

{¶ 20} The companion said she looked up and saw a lady laughing and Rhoads said, "Oh, no," and commented, "That's Beth." Rhoads moved his vehicle to another gas pump. The companion said Rhoads walked over toward the victim and the victim's male friend. She indicated Rhoads was talking with the victim's friend. The companion said she could not hear any of the conversation, but everyone appeared calm.

{¶ 21} The transcript of the trial indicates that Rhoads moved for a judgment of acquittal at the conclusion of the prosecution's case. A Crim.R. 29 motion is asserted to test the sufficiency of the evidence. *State v. Annor*, 12th Dist. No. CA2009-10-248, 2010-Ohio-5423, ¶ 20. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 22} Rhoads also argues that the conviction was against the manifest weight of the evidence. A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Clements*, 12th Dist. No. CA2009-11-277, 2010-Ohio-4801, ¶ 19. A court

- 5 -

considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39.

{¶ 23} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide, since it is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. Jackson*, 12th Dist. No. CA2011-06-096, 2012-Ohio-4219, ¶ 44. Therefore, the question upon review is whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Hancock* at ¶ 39.

{¶ 24} Even though the sufficiency of the evidence and the manifest weight of the evidence are separate and legally distinct concepts, if this court determines that Rhoads' conviction was supported by the manifest weight of the evidence, that decision will also be dispositive of the issue of sufficiency. *Jackson* at ¶ 43.

{¶ 25} As previously noted, Rhoads argues there was no evidence that he knowingly caused the victim to believe that he would cause her imminent physical harm and no evidence that the victim held a "reasonable belief" that he would cause her imminent harm. We disagree.

{¶ 26} "The offense of domestic violence requires fear inspired by the threat of force." *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, ¶ 16 (9th Dist.). The *Gaydash* court, which was considering whether certain conduct constituted domestic violence for the issuance of a protection order, found that a vehicle can be an instrumentality of violence when used in a certain way. *Id.*

{¶ 27} The *Gaydash* court concluded that "the act of driving a large sports utility vehicle directly at another vehicle constitutes a threat of force in that such conduct is a threat

of violence against the occupants of the other vehicle. The fear that this particular threat of violence incites is domestic violence." *Gaydash* at ¶ 16.

{¶ 28} We find *Gaydash* persuasive in our consideration of the facts of the instant case. The state presented the testimony of two witnesses who indicated that Rhoads drove his truck at a high rate of speed toward the victim's vehicle. Both witnesses testified that Rhoads was grinning during the encounter and the victim testified that Rhoads both grinned and glared at her.

{¶ 29} We note that prior acts of violence between a defendant and the victim are highly probative in establishing the victim's belief of impending harm. *See State v. Cox*, 12th Dist. No. CA2000-07-144, 2001 WL 705664 (June 25, 2001). The victim in this case indicated that she believed Rhoads was threatening to harm her.

{¶ 30} We acknowledge that Rhoads' companion testified that the encounter was inadvertent and seemingly harmless. However, the trial court as the trier of fact in this bench trial was in the best position to judge the credibility of the witnesses when conflicting testimony was provided. *See State v. Johnson*, 12th Dist. No. CA2011-05-049, 2011-Ohio-6352, ¶ 12.

{¶ 31} The record supports the finding, beyond a reasonable doubt, that Rhoads, by his actions, knowingly caused the victim to believe that he would cause imminent physical harm to her. The trial court did not lose its way and create such a manifest injustice that the conviction should be overturned. The conviction was supported by sufficient evidence and by the manifest weight of the evidence. Rhoads' single assignment of error is overruled.

{¶ 32} Judgment affirmed.


HENDRICKSON, P.J. and M. POWELL, J., concur.