[Cite as *State v. Yantis*, 2023-Ohio-3820.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                              :
                                          :
    Appellee                          :    C.A. No. 29738
                                          :
v.                                        :    Trial Court Case No. 22CRB01391
                                          :
ALEXANDER S. YANTIS                       :    (Criminal Appeal from Municipal Court)
                                          :
    Appellant                         :
                                          :

. . . . . . . . . . .

O P I N I O N

Rendered on October 20, 2023

. . . . . . . . . . .

L. PATRICK MULLIGAN and FRANK MATTHEW BATZ, Attorneys for Appellant

JOHN D. EVERETT, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Alexander S. Yantis, appeals from his conviction for domestic violence by threats in violation of R.C. 2919.25(C) following a bench trial in the Kettering Municipal Court. In support of his appeal, Yantis claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

Yantis also claims that the trial court erroneously determined that domestic violence by threats under section (C) of R.C. 2919.25 is a lesser included offense of domestic violence under section (A) of R.C. 2919.25. For the reasons outlined below, we disagree with all of Yantis's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On November 2, 2022, Yantis was charged by complaint with two counts of domestic violence in violation of R.C. 2919.25(A) and one count of endangering children in violation of R.C. 2919.22(A). The charges stemmed from an altercation between Yantis and his wife while they were at their residence with their two-year-old daughter. Yantis pled not guilty to all the charges, and the matter proceeded to a bench trial.

{¶ 3} At trial, the State presented Yantis's wife, who testified that on November 1, 2022, she and Yantis were at their residence in Kettering, Montgomery County, Ohio, when she observed an e-mail and Facebook friend notification on Yantis's cell phone. Upon seeing the email and notification, Yantis's wife accused Yantis of cheating on her. Yantis's wife testified that Yantis, who had been pushing their daughter in a swing in the living room, became upset over her cheating accusation and pushed the swing too hard, causing their daughter to hit the ceiling. Yantis's wife testified that their daughter began screaming as a result of the incident but had no visible injuries. Yantis's wife also confirmed that no injuries were found by medical experts when she took their daughter to the hospital the following day.

{¶ 4} Immediately after the swing incident, Yantis's wife took their daughter to her

and Yantis's bedroom. During that time, Yantis's wife recalled Yantis telling her to leave the house by yelling "get the fuck out." Trial Tr., p. 12. When Yantis's wife refused to leave the house, Yantis left instead, slamming the door as he exited. Yantis's wife testified that Yantis returned to the house a few minutes later and then threw his wedding ring across the bedroom where she was nursing their daughter. Yantis's wife also recalled Yantis throwing his cell phone at the bedroom wall. In addition, Yantis's wife testified that Yantis continued yelling for her to "get the fuck out." Trial Tr., p. 13.

{¶ 5} Yantis's wife testified that after she continually refused to leave the house, Yantis eventually said that he was going to leave. Yantis's wife testified that, when Yantis said this, she went over to where Yantis was standing in the hallway and got in front of him without touching him in an attempt to calm him down. Yantis's wife testified that when she did this, Yantis pushed her away. Yantis's wife also testified that Yantis punched a hole in their daughter's bedroom door and that Yantis pushed her against the hallway cabinet, put his hands around her throat, and said: "Here bitch, is this what you wanted?" Trial Tr., p. 13-14. Yantis's wife testified that she had no bruising as a result of the incident but that her throat hurt for a few hours afterward. When asked on cross-examination if she thought Yantis intended to cause her harm, Yantis's wife testified: "I do believe he did." Trial Tr., p. 35. The testimony of Yantis's wife regarding the incident with Yantis was consistent with what she reported to the police, which was video recorded and admitted into evidence as State's Exhibit F.

{¶ 6} Yantis's 13-year-old stepson, the biological son of his wife, testified that he was upstairs in his room playing video games on his computer while Yantis and his mother

were arguing. The boy testified that he heard Yantis screaming at his mother to "get the fuck out." Trial Tr., p. 43. The boy also testified that Yantis left the house for two or three minutes and then returned. When Yantis returned, the boy heard Yantis screaming at his mother some more and a banging noise near the hallway and kitchen area. The boy testified that he stayed upstairs during the entire incident because he did not want to get involved. However, he testified that he eventually came downstairs after Yantis was gone and after he heard his mother and baby sister crying.

{¶ 7} Yantis testified in his defense and did not dispute that he and his wife got into an argument over his wife's cheating accusation. Yantis also did not dispute pushing their daughter's swing too hard during the argument. Yantis, however, claimed that the back of the swing, not their daughter, hit the ceiling, and that he was unaware of how high he had pushed the swing.

{¶ 8} Yantis also testified that he was upset with his wife and admitted to telling his wife to "get the fuck out of the house." Trial Tr., p. 67. Yantis admitted to throwing his wedding ring but could not recall whether he threw his cell phone. Yantis testified that when his wife refused to leave the house, he told her that he was going to stay with his parents. Yantis claimed that his wife thereafter tried to stop him from leaving the house and that he put his arm on his wife to move her aside. Yantis also admitted to punching a hole in his daughter's bedroom door while he was trying to leave. Yantis, however, denied putting his hands around his wife's throat and testified that he never intended to cause his wife physical harm.

{¶ 9} After considering the foregoing testimony, the trial court found Yantis guilty

of one count of domestic violence. When announcing its verdict, the trial court stated that it found Yantis guilty of "the lesser included offense of Domestic Violence via threats[,]" which is codified under R.C. 2919.25(C). Trial Tr., p. 76-77. Yantis did not object to the trial court's verdict.

{¶ 10} After the trial court announced its verdict, Yantis's case proceeded immediately to sentencing. The trial court sentenced Yantis to 30 days in jail, with 20 days suspended and one day of jail-time credit. The trial court also imposed a $250 fine with $150 suspended. During the sentencing hearing, Yantis admitted that, by virtue of his guilty verdict, he had violated his probation in a prior case, i.e., Kettering Municipal Court Case No. 20CRB00331. In light of that probation violation, the trial court revoked Yantis's probation, terminated Case No. 20CRB00331, and ordered Yantis to serve five years of supervised probation in the instant case.

{¶ 11} Yantis now appeals from his conviction for domestic violence by threats. In his appellate brief, Yantis raised three assignments of error challenging the sufficiency and manifest weight of the evidence. In a supplemental brief, Yantis also raised a fourth assignment of error challenging his conviction on grounds that the trial court erroneously determined that domestic violence by threats under section (C) of R.C. 2919.25 is a lesser included offense of domestic violence under section (A) of R.C. 2919.25. Because they are interrelated, we will address Yantis's first three assignments of error together.

**First, Second, and Third Assignments of Error**

{¶ 12} Under his first, second, and third assignments of error, Yantis contends that

his conviction for domestic violence by threats under R.C. 2919.25(C) was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

*Sufficiency of the Evidence*

{¶ 13} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 14} As previously discussed, Yantis was convicted of domestic violence by threats in violation of R.C. 2919.25(C), which provides that: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware

that the person's conduct will probably cause a certain result or will probably be of a certain nature." Pursuant to R.C. 2919.25(F)(1)(a)(i), a "family or household member" includes a spouse who resides with the offender.

{¶ 15} "The victim's state of mind is an essential element of domestic violence under R.C. 2919.25(C)." *State v. South*, 2d Dist. Champaign No. 2017-CA-34, 2018-Ohio-4146, ¶ 13, citing *State v. Fisher*, 197 Ohio App.3d 591, 2011-Ohio-5965, 968 N.E.2d 510, ¶ 16 (2d Dist.). " '[T]here must be some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm.' " *Id.*, quoting *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449, 700 N.E.2d 336 (12th Dist.1997). " 'Imminent' has been defined by Ohio courts as near at hand or impending." (Citation omitted.) *Fisher* at ¶ 17. "It has also been defined as requiring the belief of the victim that harm would occur immediately or, in the alternative, that the defendant will cause immediate physical harm." *Id.*

{¶ 16} In this case, both Yantis and his wife testified that they were married and living together at the time of the altercation in question; accordingly, there is no dispute that the evidence established that Yantis's wife was a family or household member. At trial, Yantis's wife testified that, during her argument with Yantis, Yantis pushed her out of the way when she approached him to calm him down and punched a hole in their daughter's bedroom door. She also testified that Yantis pushed her against the hallway cabinet, put his hands around her throat, and said: "Here bitch, is this what you wanted?" Trial Tr., p. 13-14. Yantis's wife further testified that her throat hurt for a few hours after the incident. When asked if she thought Yantis intended to cause her harm, Yantis's

wife testified: "I do believe he did." Trial Tr., p. 35.

{¶ 17} Given the nature of Yantis's conduct as testified to by his wife, and given that his wife specifically testified that she believed Yantis intended to cause her harm, we find that a rational factfinder could have concluded that Yantis knowingly caused his wife to believe that he would cause her imminent physical harm. The testimony of Yantis's wife indicating that Yantis had placed his hands around her throat and said: "Here bitch, is this what you wanted?" sufficiently indicated that the physical harm she feared was imminent. This was especially true since Yantis's wife testified that her throat hurt for a few hours after the incident, as this supported the notion that Yantis had applied enough pressure on her throat to put her in fear of imminent physical harm. Therefore, when viewing the testimony of Yantis's wife in a light most favorable to the State, we find that a rational factfinder could have found the essential elements of domestic violence by threats proven beyond a reasonable doubt. Accordingly, Yantis's claim that his conviction was not supported by sufficient evidence lacks merit.

*Manifest Weight of the Evidence*

{¶ 18} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine

whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14. Also, because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 1997-CA-3, 1997 WL 691510, *4 (Oct. 24, 1997). Therefore, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fac[t] to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶ 20} In this case, after reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the evidence weighed heavily against finding Yantis guilty of domestic violence by threats.

At trial, Yantis admitted to becoming angry at his wife, to moving his wife out of his way, and to punching a hole in his daughter's bedroom door. Although Yantis denied putting his hands around his wife's throat, the trial court, as trier of fact, found the testimony of Yantis's wife claiming otherwise to be more credible. Upon review, we do not find it patently apparent that the trial court lost its way or created a manifest miscarriage of justice by crediting the wife's version of events over Yantis's. " 'A verdict is not against the manifest weight of the evidence [simply] because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio-4596, ¶ 33, quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. (Other citations omitted.) Therefore, Yantis's conviction for domestic violence by threats was not against the manifest weight of the evidence.

{¶ 21} Yantis's first, second, and third assignments of error are overruled.


**Fourth Assignment of Error**

{¶ 22} Under his fourth assignment of error, Yantis claims that his conviction for domestic violence by threats under section (C) of R.C. 2919.25 should be vacated because the trial court erroneously found that offense to be a lesser included offense of domestic violence under section (A) of R.C. 2919.25. According to Yantis, this error resulted in his being found guilty of an offense for which he had not been charged. Upon review, we disagree with Yantis's claim.

{¶ 23} As a preliminary matter, we note that Yantis failed to raise this issue in the

trial court and has waived all but plain error for appeal. Plain error exists when there is "an obvious defect in the trial proceedings that affected the defendant's substantial rights, meaning that the trial court's error must have affected the outcome of the trial." *State v. Petticrew*, 2d Dist. Clark No. 2022-CA-29, 2023-Ohio-159, ¶ 18, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. Multiple courts have held that plain error exists when a trial court convicts a defendant of an offense that was not a lesser included offense of the crime charged. *See, e.g., State v. Lampela*, 2016-Ohio-8007, 67 N.E.3d 836, ¶ 10, 11, and 21 (6th Dist.); *State v. Gary*, 117 Ohio App.3d 286, 289, 690 N.E.2d 572 (8th Dist.1996); *State v. Campbell*, 8th Dist. Cuyahoga No. 73643, 1998 WL 827601, *1-2 (Nov. 25, 1998).

{¶ 24} Generally speaking, "a defendant cannot be convicted of a charge not contained in the complaint or indictment." *Cleveland v. Jenkins*, 8th Dist. Cuyahoga No. 80758, 2002-Ohio-6046, ¶ 15, citing *State v. Broughton*, 51 Ohio App.3d 10, 553 N.E.2d 1380 (12th Dist.1988); *State v. Myers*, 119 Ohio App.3d 642, 646, 695 N.E.2d 1226 (12th Dist.1997). "It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." (Citations omitted.) *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 25} That said, "[w]hen a lesser included offense is included within the offense charged in a complaint or indictment, the defendant may be found guilty of the lesser included offense even though the lesser included offense was not separately charged in the complaint or indictment." *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 32 (8th Dist.), citing Crim.R. 31(C), R.C. 2945.74, and *State v. Lytle*, 49 Ohio St.3d 154,

157, 551 N.E.2d 950 (1990). "Lesser included offenses need not be separately charged because when an indictment or complaint charges a greater offense, ' "it necessarily and simultaneously charges the defendant with lesser included offenses as well." ' " *Cohen* at ¶ 32, quoting *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, 905 N.E.2d 151, ¶ 15, quoting *Lytle* at 157. *Accord In re S.W.*, 2d Dist. Montgomery No. 24525, 2011-Ohio-5291, ¶ 11.

{¶ 26} "In determining whether an offense is a lesser included offense of another, a court shall consider [1] whether one offense carries a greater penalty than the other, [2] whether some element of the greater offense is not required to prove commission of the lesser offense, and [3] whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus.

{¶ 27} As previously discussed, the trial court in this case found that domestic violence by threats under section (C) of R.C. 2919.25 is a lesser included offense of domestic violence under section (A) of R.C. 2919.25. R.C. 2919.25(A) provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(C) provides that: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶ 28} Domestic violence under R.C. 2919.25(A) is a first-degree misdemeanor and thus carries a greater penalty than domestic violence by threats under R.C.

2919.25(C), which is a fourth-degree misdemeanor. R.C. 2919.25(D)(2). Accordingly, the first part of the lesser-included-offense test is satisfied. The second part of the lesser-included-offense test is also satisfied because the element of causing or attempting to cause physical harm in the greater offense of domestic violence under R.C. 2919.25(A) is not required for the lesser offense of domestic violence by threats under R.C. 2919.25(C).

{¶ 29} The third part of the lesser-included-offense tests requires us to determine whether " 'the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.' " *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 8, quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 26. "In making this assessment, a court compares the elements of each crime." *Id.*, citing *Evans* at ¶ 14. More specifically, it "requires a comparison of the elements of the respective offenses in the abstract to determine whether one element is the functional equivalent of the other. If so, and if the other parts of the test are met, one offense is a lesser included offense of the other." *Evans* at ¶ 25. "An offense that includes an element that another offense lacks cannot be a lesser included offense of that other offense." *Owens at* ¶ 8.

{¶ 30} In *State v. Rihm*, 101 Ohio App.3d 626, 656 N.E.2d 372 (2d Dist.1995), this court held that a violation of R.C. 2919.25(C) is *not* a lesser included offense of R.C. 2919.25(A) because:

> * * * R.C. 2919.25(A), as statutorily defined, can be committed
>
> without also committing the lesser offense of R.C. 2919.25(C), as statutorily

defined. For example, a defendant who knowingly causes or attempts to cause physical harm to a family or household member by "blind-siding" her or attacking her while she is asleep, and then leaves immediately thereafter, has not caused the victim to believe that he will cause her imminent physical harm; he has already done so and then broken off the attack. In such an instance, the defendant may be convicted under R.C. 2919.25(A) but not 2919.25(C). Hence, R.C. 2919.25(C) is not a lesser included offense of R.C. 2919.25(A)[.]

*Id.* at 629-630. *Accord State v. Howard*, 2d Dist. Montgomery No. 17502, 1999 WL 960587, *1 (July 30, 1999).

**{¶ 31}** The State argues, however, that since our decision in *Rihm*, the Supreme Court of Ohio has modified the lesser-included-offense test in a manner that no longer justifies finding that a violation of R.C. 2919.25(C) is not a lesser included offense of R.C. 2919.25(A). Specifically, the State points to *Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, wherein the Supreme Court modified a prior version of the lesser-included-offense test that was announced in *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988). The *Deem* version of the lesser-included-offense test provided, in relevant part, that "the greater offense cannot, as statutorily defined, ***ever*** be committed without the lesser offense, as statutorily defined, also being committed[.]" (Emphasis added.) *Deem* at paragraph three of the syllabus. *Evans* thereafter modified the version in *Deem* to omit the word "ever." *Evans* at ¶ 25.

**{¶ 32}** The question in *Evans* was whether robbery as defined in R.C.

2911.02(A)(2) was a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1). "Under [those] statutes, robbery required proof of a threat or an attempt to inflict harm or actual infliction of harm during a theft offense, and aggravated robbery required proof of displaying, brandishing, indicating possession of, or actually using a deadly weapon during a theft offense." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 13. "The defendant-appellee [in *Evans*] argued that one could commit theft while indicating possession of a deadly weapon without threatening to inflict harm, such as a scenario where one shoplifts while purchasing the deadly weapon." *Id.*, citing *Evans* at ¶ 24. The Supreme Court, however, "rejected this argument as far-fetched and implausible." *Id.* To ensure that such implausible scenarios would not derail a proper lesser-included-offense analysis in the future, the Supreme Court deleted the word "ever" from the *Deem* version of the lesser-included-offense test. *Evans* at ¶ 25. Therefore, as previously noted, the portion of the test in question currently provides that "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *Id.* at paragraph two of the syllabus.

{¶ 33} The State argues that this court's holding in *Rihm* was based on the same type of implausible scenario that has since been rejected in *Evans*. Although this court has not addressed the holding in *Rihm* since *Evans* was decided, this court has rejected the unaware victim rationale on which the holding in *Rihm* was based. For example, in *In re S.W.*, 2d Dist. Montgomery No. 24525, 2011-Ohio-5921, this court rejected the following rationale used in *State v. Schaefer*, 2d Dist. Greene No. 1999-CA-88, 2000 WL 492094 (Apr. 28, 2000), a rationale which relied on the *Deem* version of the lesser-

included-offense test:

> In our view, it is possible to commit the offense of domestic violence without committing disorderly conduct. In particular, it is apparent that one may attempt to cause physical harm to another without his or her knowledge, in which case the victim will not have suffered inconvenience, annoyance, or alarm. We concede that, in most cases, the actions by which one causes or attempts to cause physical harm to another may also cause inconvenience, annoyance, or alarm to that person. But a victim might be wholly unaware of an attempt to cause physical harm where, for example, the perpetrator throws an object at the victim, who is not looking at the perpetrator, but misses his target, and thus the victim suffers no inconvenience, annoyance, or alarm.

*Schaefer* at *3.

{¶ 34} In *S.W.*, this court held that "the holding in *Evans* undermines our rationale in *Schaefer*, to the extent that we relied on the possibility that a victim may, in some circumstances, be wholly unaware of an attempt to cause physical harm." *S.W.* at ¶ 37. We explained that, "[u]nless the evidence in a particular case demonstrates that the victim was unaware, there is now no basis to hold that the minor misdemeanor form of domestic violence that R.C. 2917.11(A)(1) prohibits cannot be a lesser included offense of domestic violence, in violation of R.C. 2919.25(A)[.]" *Id.* At least one other court has similarly rejected the unaware victim rationale. *See, e.g., Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, at ¶ 32 ("We believe that the unaware victim and did-not-take-threat-seriously

hypotheticals are the very types of 'implausible scenarios' and 'remote possibilit[ies]' that the *Evans* court sought to address in clarifying the *Deem* test.").

**{¶ 35}** Based on the foregoing, we agree with the State's claim that the blindsided, unaware victim scenario that *Rihm* advanced was the type of implausible scenario that *Evans* sought to preclude from the lesser-included-offense analysis. Although the holding in *Rihm* was appropriate under the *Deem* version of the lesser-included-offense analysis, that holding is no longer appropriate under the Supreme Court's modified analysis in *Evans*. Accordingly, we expressly overrule our holding in *Rihm*.

**{¶ 36}** Applying the modified analysis in *Evans*, we find that, in most circumstances, when an offender engages in conduct that causes or attempts to cause physical harm to a family or household member, that conduct in turn causes the family or household member to believe that the offender will cause them imminent physical harm. In other words, the belief of imminent physical harm required for domestic violence by threats under R.C. 2919.25(C) typically goes hand in hand with the physical harm or attempted physical harm that is required for domestic violence under R.C. 2919.25(A). Therefore, when comparing the elements of these offenses in the abstract, they are the functional equivalent of one another.

**{¶ 37}** Based on the foregoing reasoning, and having overruled our holding in *Rihm*, we now find that the greater offense, i.e., domestic violence under R.C. 2919.25(A), as statutorily defined cannot be committed without the lesser offense, i.e., domestic violence by threats under R.C. 2919.25(C), as statutorily defined also being committed. That being the case, the third part of the lesser-included-offense test set forth in *Evans* is

satisfied. Because all three parts of the test in *Evans* are satisfied, we hold that domestic violence by threats under R.C. 2919.25(C) is a lesser included offense of domestic violence under R.C. 2919.25(A). Accordingly, we find no error, let alone plain error, with regard to Yantis's conviction under R.C. 2919.25(C).

**{¶ 38}** Yantis's fourth assignment of error is overruled.

## Conclusion

**{¶ 39}** Having overruled all four of Yantis's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.